Sheri Pan (SBN 316136)
sheri@zwillgen.com
ZWILLGEN LAW LLP
369 Pine Street, Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2335

*Attorney for Defendant*
*National Public Radio, Inc.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEPHANIE ST. MARY, on behalf of herself and all similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL PUBLIC RADIO, INC., a District of Columbia non-profit corporation,<br><br>Defendant. | Case No.: 2:26-cv-06005-AB-AJR<br><br>**DEFENDANT NATIONAL PUBLIC RADIO, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: October 23, 2026<br>Time: 10:00 a.m.<br>Judge: Hon. André Birotte Jr.<br>Courtroom: 7B, 7th Floor |

**PLEASE TAKE NOTICE** that on October 23, 2026 at 10:00 a.m., or as soon thereafter as this matter may be heard before the Honorable André Birotte Jr. in Courtroom 7B in the United States District Court for the Central District of California, 350 W. First Street, Los Angeles, CA 90012, Defendant National Public Radio, Inc. ("NPR") will and hereby does respectfully move for dismissal under Fed. R. Civ. P. Rule 12(b)(1) for lack of subject-matter jurisdiction, Rule 12(b)(2) for lack of personal jurisdiction, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 28, 2026. *See* Declaration of Laura-Kate Bernstein ("Bernstein Decl.") ¶ 2. The conference was held via videoconference. *Id.* Counsel discussed the deficiencies of the Complaint, specifically that this Court does not have personal jurisdiction over NPR, that Plaintiff lacks Article III standing, and that Plaintiff's individual claims each fail to state a claim upon which relief can be granted. *Id.* ¶¶ 3-5. The parties were unable to reach a resolution, necessitating this Motion. *Id.* ¶ 6.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration Laura-Kate Bernstein, the Declaration of Daphne Kwon, the pleadings and records on file in this matter, the oral arguments of counsel and other matters properly considered by the Court at the hearing on the Motion, and all matters of which this Court may take judicial notice.

Dated: September 18, 2026

Respectfully submitted,

ZWILLGEN LAW LLP

By: /s/ Sheri Pan
Sheri Pan (SBN 316136)
sheri@zwillgen.com
*Attorney for Defendant*
*National Public Radio, Inc.*

# TABLE OF CONTENTS


I. Introduction .......... 1

II. Relevant Allegations .......... 2

III. The Court Lacks Personal Jurisdiction Over NPR .......... 4

a. Legal Standard .......... 4

b. NPR is not subject to general jurisdiction in California .......... 5

c. NPR is not subject to specific jurisdiction in California .......... 6

i. NPR did not purposefully direct the challenged conduct at California. .......... 6

ii. Plaintiff's claims do not arise out of or relate to NPR's California contacts. .......... 7

IV. Plaintiff Lacks Article III Standing .......... 9

a. Plaintiff does not allege that any private information about her was disclosed. .......... 9

b. The subjects of the articles do not supply an injury .......... 10

c. Pseudonymous identifiers and speculative profiling do not establish a privacy injury. .......... 12

d. Neither an alleged statutory violation nor NPR's alleged economic benefit supplies the missing injury. .......... 13

V. Plaintiff Fails to State Any Claim .......... 14

a. Plaintiff's CIPA and Federal Wiretap Act claims fail because she does not allege interception of the contents of any communication. .......... 14

b. Plaintiff does not plausibly allege that any third party read a communication while it was in transit. .......... 16

c. The Federal Wiretap Act claim independently fails for two additional reasons. .......... 18

i. NPR's consent independently defeats Plaintiff's Federal Wiretap Claim. .......... 18

ii. The Wiretap Act does not provide a private right of action for secondary liability. .......... 19

d. Plaintiff fails to state a UCL claim .......... 20

e. Plaintiff fails to state a constitutional or common-law privacy claim. .......... 21

i. Plaintiff alleges no intrusion into information in which she had a reasonable expectation of privacy. .......... 21

ii. The alleged conduct is neither serious nor highly offensive .......... 22

f. Plaintiff fails to state a claim for unjust enrichment. .......... 23

VI. Conclusion .......... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................13, 14

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015)....................24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................14

*BNSF Ry. Co. v. Tyrrell*,
581 U.S. 402 (2017)....................5, 6

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) (en banc)....................1, 6, 7

*Bristol-Myers Squibb Co. v. Superior Ct.*,
582 U.S. 255 (2017)....................5

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999)....................21

*Cody v. Data Intensity, LLC*,
2026 WL 2324418 (C.D. Cal. Aug. 10, 2026)....................6, 7

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011)....................8

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)....................23

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................5

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010)....................18

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025)....................10, 13

*Diaz v. Paramount Skydance Corp.*,
2026 WL 1090958 (C.D. Cal. Apr. 20, 2026)....................11, 24

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .... 19

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) .... 23

*Firlej v. Petrosian Esthetic Enters., LLC*,
2026 WL 2575938 (C.D. Cal. Aug. 31, 2026) .... 17, 18

*First Capitol Consulting, Inc. v. NetTax, LLC*,
2026 WL 2603772 (C.D. Cal. Sept. 2, 2026) .... 23

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .... 5

*Freeman v. DirecTV, Inc.*,
457 F.3d 1001 (9th Cir. 2006) .... 19, 20

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .... 21, 22, 23

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .... 21, 22

*In re Apple Data Priv. Litig.*,
824 F. Supp. 3d 888 (N.D. Cal. 2026) .... 15

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .... 21, 23

*In re USA Today Co., Inc. Internet Tracking Litig.*,
2026 WL 932655 (N.D. Cal. Apr. 6, 2026) .... 12, 24

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .... 2, 14, 15, 16

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) .... 5

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) .... 12

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .... 9, 20

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2012) .......... 20

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 17

*Kwikset Corp. v. Superior Ct.*,
51 Cal. 4th 310 (2011) .......... 20

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026) .......... 11, 12

*Malko v. GNC Holdings, LLC*,
2026 WL 2218133 (C.D. Cal. July 29, 2026) .......... 11, 12, 13, 24

*Moody v. Textron Inc.*,
2025 WL 2828109 (C.D. Cal. Sept. 24, 2025) .......... 7

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000) .......... 20

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) .......... 4

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... *passim*

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .......... 19

*Ramirez v. Trusper, Inc.*,
2026 WL 2351235 (N.D. Cal. Aug. 13, 2026) .......... 19

*Rodriguez v. Accident Fund Holdings, Inc.*,
2026 WL 2365062 (C.D. Cal. Aug. 13, 2026) .......... 21, 22, 24

*Rodriguez v. Brushfire Recs.*,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) .......... 10, 22

*Rounds v. Case-Mate Inc.*,
2025 WL 1873999 (C.D. Cal. July 2, 2025) .......... 8

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 4, 5, 6, 7

*Shah v. Drexel Chem. Co.*,
2026 WL 2602923 (C.D. Cal. Sept. 1, 2026) .......... 11

*Shah v. Hilton Worldwide Holdings Inc.*,
2025 WL 1683577 (N.D. Cal. June 11, 2025) .......... 7

*Shah v. Talentbridge, Inc.*,
2026 WL 1507888 (C.D. Cal. May 28, 2026) .......... 11

*Sisti v. Bosley Inc.*,
831 F. Supp. 3d 979 (C.D. Cal. 2026) .......... *passim*

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......... 21

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999) .......... 19

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 9

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 12, 22

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 5, 7, 8

*Wiley v. Universal Music Invs., Inc.*,
2026 WL 2690163 (N.D. Cal. Sept. 14, 2026) .......... 16

*Xavier v. AutoNation, Inc.*,
2026 WL 166909 (C.D. Cal. Jan. 14, 2026) (Birotte, J.) .......... 6, 7, 8

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 15

**Statutes**

18 U.S.C. § 2510 .......... 15

18 U.S.C. § 2511 .......... 15, 18, 19, 20

18 U.S.C. § 2520 .......... 20

18 U.S.C. § 2702 .......... 19

18 U.S.C. § 2707 .......... 19

Cal. Bus. & Prof. Code § 17204 .......... 20

Cal. Civ. Code § 1798.100 .......... 22

Cal. Civ. Code § 1798.120 .......... 22

Cal. Code Civ. Proc. § 410.10 .......... 5

Cal. Penal Code § 631 .......... *passim*

Federal Wiretap Act .......... *passim*

**Other Authorities**

Cal. Const. .......... 4

Fed. R. Civ. P. 4 .......... 4

Fed. R. Civ. P. 12 .......... 14

## I. Introduction

This case arises from Plaintiff Stephanie St. Mary's visits to two webpages on non-profit National Public Radio, Inc.'s ("NPR") website, NPR.org. Plaintiff does not allege that she created an account, purchased anything, submitted a form, conducted a search, or otherwise provided NPR with personal information. She alleges only that, when she viewed two news articles on the site, third-party analytics technologies received the URLs and titles of the NPR webpages she viewed, along with information about the browser or device used to view them. Based on those pedestrian website interactions, Plaintiff asserts six claims for wiretapping, invasion of privacy, unfair competition, and unjust enrichment.

While Plaintiff's claims lack merit for multiple independent reasons, they suffer from an antecedent problem: NPR is a District of Columbia nonprofit, and Plaintiff alleges no facts showing that NPR directed the challenged conduct toward California. All she alleges is that the analytics technologies operate on NPR's nationally accessible Website and that she happened to visit that Website while in California. *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) (en banc), expressly preserves the requirement that a plaintiff show "something more" than mere passive nationwide accessibility to establish the court's jurisdiction over a defendant. *Id.* at 758 n.16. Plaintiff alleges no such "something more" here.

The Complaint suffers from a second fundamental flaw—Ninth Circuit precedent forecloses attempts to transform ordinary website analytics into an actionable privacy invasion that confers Article III standing. *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), requires a plaintiff asserting a privacy injury to allege the collection of "embarrassing, invasive, or otherwise private information." *Id.* at 791. Plaintiff does not do so. The URLs at issue identify NPR's own published articles—not anything Plaintiff said or disclosed about herself. Nor can Plaintiff manufacture a privacy injury from the subject matter of the articles she happened to access. Reading publicly available reporting that references various

religious or political topics no more reveals a reader's beliefs than reading an article about cancer establishes that the reader has cancer.

Plaintiff's allegations also fail to state any of the claims she asserts. Ninth Circuit precedent holds that a simple webpage URL does not constitute the "contents" of a communication unless it contains some user-generated communication. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108–09 (9th Cir. 2014). Plaintiff alleges no user-generated information at all. And the Complaint's own screenshots belie its characterization of the alleged transmissions as "interceptions": they show a browser making separate requests to Google, ComScore, and Cxense, not those companies intercepting a communication traveling between Plaintiff and NPR. Plaintiff's Federal Wiretap Act claim has still further problems: NPR consented to the alleged communications, and the Act does not allow for civil liability based on alleged facilitation of another entity's interception.

Plaintiff's other claims fare no better. Her UCL claim fails because she does not allege she lost money or property. Her constitutional and common law privacy claims fail because the collection of IP address and browser information is not an intrusion into a private place, let alone one that is highly offensive. And her unjust enrichment claim fails because the Complaint does not identify any benefit she conferred on NPR, among other reasons.

The Complaint should be dismissed for multiple independent reasons.

## II. Relevant Allegations

NPR is a District of Columbia nonprofit media organization that operates NPR.org (the "Website"), where it publishes news reporting, articles, audio, video, and other editorial content for readers and listeners nationwide. Compl. ¶ 16. Plaintiff is a California resident who alleges that she visited the Website from California during the putative class period. *Id.* ¶ 15.

The Complaint identifies two NPR articles Plaintiff allegedly viewed. One, titled "Christian therapists and LGBTQ people of faith respond to Supreme Court

ruling," concerned reactions to a Supreme Court decision about the constitutionality of Colorado's ban on conversion therapy. *Id.* ¶¶ 38–39. The other, titled "Why liberals, people of color and LGBTQ Americans say they're buying guns," reported on firearm purchases among various demographic groups. *Id.* Plaintiff does not allege why she viewed either article. Nor does she allege that she searched for either topic on NPR.org, typed anything into the Website, submitted a form, created an account, made a purchase, or provided NPR with information about herself.

Instead, Plaintiff challenges three analytics technologies allegedly deployed on the Website: Google Analytics 4 ("GA4"), ComScore, and Cxense (collectively, the "Analytics Technologies"). Compl. ¶¶ 8–10. According to the Complaint, NPR "embeds and deploys" these technologies "on the Website" and when a visitor loads or navigates the Website the technologies cause the visitor's browser to send information to servers operated by the respective third parties. *Id.* ¶¶ 11–12. Plaintiff alleges that NPR uses these technologies for analytics, audience measurement, advertising, and related purposes. *Id.* ¶¶ 4, 9–12. The Complaint quotes NPR's Privacy Policy, including its disclosures concerning the collection and sharing of information associated with use of the Website. *Id.* ¶ 23. Plaintiff does not allege that she exercised her right to opt out of the challenged collection or sharing, that NPR disregarded any privacy choice she made, or that NPR represented that no analytics tracking would occur when she accessed the Website.

The Complaint includes screenshots purporting to show transmissions associated with access to the two articles. *Id.* ¶¶ 40–60. But the screenshots are not from Plaintiff's visits. They reflect unspecified visits made by an unspecified device or browser at unspecified times. The Complaint then alleges "on information and belief" that the Analytics Technologies operated the same way when Plaintiff visited the Website. *Id.* ¶¶ 39–60. For each Analytics Technology, the Complaint identifies requests sent to the corresponding third party's domain that allegedly contained the NPR webpage URL, page title, referrer information, and browser-

related information. *Id.* ¶¶ 40–60 & Figs. 1–9. The Complaint characterizes these distinct, separate browser transmissions to third parties as "interceptions" of communications with NPR. *See id.* ¶¶ 12, 44, 51, 58.

The Complaint does not allege that Plaintiff provided (or the Analytics Technologies received) her name, email address, phone number, payment information, search terms, form entries, messages, or any other information she supplied about herself. Although Plaintiff posits that the technologies use persistent identifiers and can facilitate "identity resolution" and behavioral profiling, she does not allege that Google, ComScore, or Cxense actually connected any identifier associated with her visits to Stephanie St. Mary, created a profile identifying her, or associated her visits to the two NPR articles with any sensitive fact about her. *See id.* ¶¶ 4, 9, 45, 52, 59.

Based on these allegations, Plaintiff seeks to represent all California residents who accessed NPR's Website during the class period—regardless of what NPR content they viewed. *Id.* ¶ 61. She asserts claims under CIPA § 631 and the Federal Wiretap Act, along with derivative claims under California's UCL, the California Constitution, common-law intrusion upon seclusion, and unjust enrichment.

## III. The Court Lacks Personal Jurisdiction Over NPR

### a. Legal Standard

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing Fed. R. Civ. P. 4(k)(1)(A)). To establish personal jurisdiction, a plaintiff must show that the long-arm statute of the forum state confers personal jurisdiction over an out-of-state defendant and that the exercise of jurisdiction is consistent with federal due process requirements. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154-55 (9th Cir. 2006). California's long-arm statute permits California courts to

exercise jurisdiction to the extent consistent with due process. Cal. Code Civ. Proc. § 410.10.

A court's exercise of personal jurisdiction over a non-resident defendant is consistent with due process only if that defendant has "minimum contacts" with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (internal quotations omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A forum state may exercise "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction" over a non-resident defendant. *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017) (citation omitted).

**b. NPR is not subject to general jurisdiction in California.**

Plaintiff does not allege that the Court has general jurisdiction over NPR. *See* Compl. ¶ 26. This makes sense, as general jurisdiction allows a court to adjudicate any claim against a defendant regardless of the connection between the claim and forum "only when a defendant is 'essentially at home' in the State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (citation omitted). "This is an exacting standard[.]" *Schwarzenegger*, 374 F.3d at 801.

NPR is not subject to general jurisdiction in California. NPR is headquartered in and organized under the laws of the District of Columbia (Compl. ¶ 16; Declaration of Daphne Kwon ("Kwon Decl."), ¶¶ 2–3.) California is thus not a paradigmatic forum where NPR is at home. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (paradigm forums for general jurisdiction are a corporation's place of incorporation and principal place of business). Nor is this an "exceptional" case in which NPR has contacts sufficient to render it "at home" in California. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 & n.19 (2014). While the Complaint alleges some NPR presence in California, it does not allege that NPR has "so heavily

engaged in activity" in California that it is "essentially at home" there. *See BNSF*, 581 U.S. at 414.

**c. NPR is not subject to specific jurisdiction in California.**

Specific jurisdiction requires that (1) NPR purposefully directed activities at California; (2) Plaintiff's claims arise out of or relate to those activities; and (3) jurisdiction is reasonable. *Schwarzenegger*, 374 F.3d at 802. Plaintiff bears the burden on the first two requirements, and failure to satisfy either defeats jurisdiction. *Id.; Xavier v. AutoNation, Inc.*, 2026 WL 166909, at *5–6 (C.D. Cal. Jan. 14, 2026) (Birotte, J.). Plaintiff cannot meet her burden to demonstrate either (much less both) of the first two prongs and, even if she could, the exercise of jurisdiction would not be reasonable.

**i. NPR did not purposefully direct the challenged conduct at California.**

For tort claims, purposeful direction requires an intentional act "expressly aimed" at California that causes harm the defendant knows is likely to be suffered there. *Briskin v. Shopify, Inc.*, 135 F.4th at 751-52. Although *Briskin* rejected any requirement that a defendant treat California differently from other states, it reaffirmed that "'something more' than mere passive nationwide accessibility" is needed for express aiming. *Id.* at 758 & n.16. That "something more" is absent here. Plaintiff alleges only that she visited NPR.org from California and, "on information and belief," that the Analytics Technologies operated during her visits. Compl. ¶ 39. She does not allege that NPR knew she (or any particular visitor) was in California before the alleged tracking occurred.

That distinguishes *Briskin*. There, Shopify processed the plaintiff's online purchase, obtained his name and payment information, and, *knowing he was in California*, installed tracking cookies on his device and collected data for commercial gain. 135 F.4th at 746–48, 756, 759. Courts applying *Briskin* have treated that knowledge as critical. *See Cody v. Data Intensity, LLC*, 2026 WL

2324418, at *3 (C.D. Cal. Aug. 10, 2026) ("Critically, in *Briskin*, the defendant knew that the plaintiff was in California when it caused cookies to be installed on his device."); *Shah v. Hilton Worldwide Holdings Inc.*, 2025 WL 1683577, at *2 (N.D. Cal. June 11, 2025) (distinguishing *Briskin* where defendant was not alleged to know the location of particular devices). Knowledge obtained by a third-party Analytics Technology cannot supply NPR's missing forum contact. *Cody*, 2026 WL 2324418, at *3; *Shah*, 2025 WL 1683577, at *2.

Even if Plaintiff alleged such knowledge, the commercial context is different. Shopify's business model involved processing transactions and obtaining consumer data "for its own commercial gain." *Briskin*, 135 F.4th at 756. NPR is a nonprofit organization that makes journalism available nationwide. Compl. ¶ 16. Plaintiff alleges no purchase, payment information, account, or other commercial transaction with NPR—only that she read two publicly available articles. *See Moody v. Textron Inc.*, 2025 WL 2828109, at *5 (C.D. Cal. Sept. 24, 2025) (distinguishing *Briskin* absent allegation defendant relied on California consumers for commercial gain).

Ultimately, the only alleged connection between the challenged conduct and California is Plaintiff's location when she accessed NPR's nationally available Website. But "the plaintiff cannot be the only link between the defendant and the forum," *Walden*, 571 U.S. at 285, and nationwide accessibility alone is insufficient, *Briskin*, 135 F.4th at 758 n.16. Plaintiff therefore cannot establish purposeful direction.

**ii. Plaintiff's claims do not arise out of or relate to NPR's California contacts.**

Because Plaintiff does not meet the purposeful direction test, the Court "need not address the remaining elements of the specific jurisdiction analysis." *Xavier*, 2026 WL 166909, at *6. Even if Plaintiff could establish purposeful direction, her claims must also "arise[] out of or relate[] to" NPR's forum-related activities. *Schwarzenegger*, 374 F.3d at 802. This requires a connection between NPR's

California activities and "the allegedly tortious conduct itself," not merely NPR's general presence or activities in the State. *Xavier*, 2026 WL 166909, at *4–5 (finding no specific jurisdiction over CIPA claims despite allegations that defendant derived approximately one-fifth of its revenue from California).

None of NPR's alleged California activities gives rise to Plaintiff's claims. The Complaint alleges that NPR operated a bureau and studio in Culver City, but alleges no connection between NPR West and the challenged tracking. Compl. ¶ 19. Likewise, its conclusory allegation that NPR "cultivated California as a significant market" for its reporting, *id.* ¶ 18, has nothing to do with the alleged use of Analytics Technologies. Plaintiff's claims arise from Website analytics—not NPR's California bureau, supposed California-focused reporting, or other activities in the State. *See Xavier*, 2026 WL 166909, at *4–5.

Plaintiff separately invokes Google's California headquarters, alleging that NPR partnered with Google to deploy GA4 and that some data flowed to Google-operated servers. Compl. ¶¶ 20–21. But Google's location is not a California contact created by NPR, and a third party's forum contacts cannot supply the necessary connection. *See Walden*, 571 U.S. at 284–85 (jurisdiction "must arise out of contacts that the defendant himself creates with the forum" (cleaned up)); *Rounds v. Case-Mate Inc.*, 2025 WL 1873999, at *7 (C.D. Cal. July 2, 2025) (relationship with California-based tracking provider insufficient).[1]

[1] Nor would exercising jurisdiction be reasonable. Relevant considerations include the extent of the defendant's purposeful interjection into the forum, the burden of defending there, the forum's interest, the most efficient resolution of the controversy, the plaintiff's interest in convenient relief, and the availability of an alternative forum. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011). Here, NPR's suit-related interjection into California is nonexistent; NPR is a District of Columbia nonprofit; and the alleged conduct concerns a nationally accessible Website and nationwide analytics practices, not California-specific conduct. California's interest based on Plaintiff's residence cannot itself create jurisdiction. *See Walden*, 571 U.S. at 290. In any event, the Court need not reach

In sum, Plaintiff's claims arise from her own decision to access NPR's nationally available Website from California, not from any suit-related conduct NPR directed at California. Because NPR did not purposefully direct the challenged conduct at California and Plaintiff's claims do not arise out of NPR's California activities, this Court lacks specific personal jurisdiction over NPR.

## IV. Plaintiff Lacks Article III Standing

Even if the Court had personal jurisdiction over NPR, the Complaint should be dismissed because it does not allege an injury sufficient to confer standing.

Article III requires a concrete and particularized injury, even where a statute provides a cause of action. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426–27 (2021). In the privacy context, *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), requires a plaintiff to identify harm comparable to the "highly offensive" intrusions or disclosures traditionally actionable at common law. *Id.* at 791–92; *see also Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1180 (N.D. Cal. 2025) ("[A] concrete injury arises only where the alleged harm involves personal information—and specifically, information whose disclosure would be considered highly offensive to a reasonable person." (internal quotation omitted)). The inquiry turns on what private information about this Plaintiff was actually collected or disclosed—not what the technology might collect in other circumstances. *Id.*

### a. Plaintiff does not allege that any private information about her was disclosed.

Even assuming the transmissions observed during testing also occurred during Plaintiff's visits, they do not establish a privacy injury. The alleged information consists principally of NPR webpage URLs and titles, referrer information, and browser or device identifiers. Compl. ¶¶ 40–60. Plaintiff does not

---

reasonableness because Plaintiff cannot satisfy either of the first two requirements. *Xavier*, 2026 WL 166909, at *5–6.

allege that she entered her name, contact information, financial or medical information, search terms, or anything else about herself.

That is less intrusive than the tracking *Popa* held insufficient. There, session-replay software allegedly collected mouse movements, clicks, keystrokes, URLs, and other website interactions. 153 F.4th at 786. Yet because the plaintiff identified "no embarrassing, invasive, or otherwise private information" collected about her, the Ninth Circuit found no concrete privacy injury. *Id.* at 791–92. Courts applying *Popa* have reached the same conclusion with IP addresses, referrer URLs, device identifiers, and similar metadata. *See Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *4–5 (C.D. Cal. Dec. 29, 2025); *Rodriguez v. Brushfire Recs.*, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025). Indeed, *Sisti v. Bosley Inc.*, 831 F. Supp. 3d 979, 987 (C.D. Cal. 2026), *appeal filed*, No. 26-3458 (9th Cir. May 28, 2026), found no concrete injury even where third parties allegedly learned that the plaintiff completed a hair-transplantation consultation form and received identifiers enabling them to identify him. Plaintiff alleges considerably less here: she does not allege she supplied *any* information about herself to NPR, let alone personal or sensitive information.

**b. The subjects of the articles do not supply an injury.**

Plaintiff cannot manufacture a privacy injury from the subjects of the two news articles she viewed. One concerned a therapist's and an LGBTQ individual's reactions to a Supreme Court decision, and the other firearm purchases by various demographic groups. Compl. ¶¶ 38–39. Anyone might read NPR's reporting for any number of reasons, and nothing about Plaintiff's decision to view these articles reveals her identity, beliefs, sexual orientation, firearm ownership, or any other private fact about her. Whatever the articles may say about their subjects, their URLs disclose no "embarrassing, invasive, or otherwise private information" about Plaintiff. *Popa*, 153 F.4th at 791.

Indeed, Ninth Circuit courts consistently reject attempts to infer sensitive personal information from browsing activity. In *Malko v. GNC Holdings, LLC*, the defendant allegedly collected URLs showing that the plaintiff searched for—and ultimately purchased—a health-related product, together with persistent identifiers uniquely associated with him. 2026 WL 2218133, at *3–4 (C.D. Cal. July 29, 2026). The court nevertheless found no concrete privacy injury because that activity did not necessarily reveal anything about the plaintiff's own health. *Id.* at *4.

Similarly, *Shah v. Talentbridge, Inc.* held that searches for "felony-friendly jobs" and "jobs no background check" did not establish a privacy injury because they were not tied to the plaintiff's identity or criminal history and did not establish that the searcher was a felon. 2026 WL 1507888, at *3 (C.D. Cal. May 28, 2026), *appeal filed*, No. 26-3514 (9th Cir. June 1, 2026). Most recently, another court in this District found no concrete injury even where the plaintiff alleged that third parties received his *actual search queries*, IP address, page-visit patterns, and other metadata that together purportedly created a "personally identifying profile." *Shah v. Drexel Chem. Co.*, 2026 WL 2602923, at *3–6 (C.D. Cal. Sept. 1, 2026). The search terms remained generic information that revealed nothing personal about the plaintiff, and combining them with browsing "patterns" or "behaviors" did not make them any more individualized. *Id.* The same rule applies even where the content viewed is arguably more sensitive and users have registered accounts. *See Diaz v. Paramount Skydance Corp.*, 2026 WL 1090958, at *4–5 (C.D. Cal. Apr. 20, 2026) (no concrete injury where minors' viewing activity on a streaming platform was allegedly transmitted with unique identifiers and browser information because the data did not link the viewing history to the minors' names or other private personal information). As *Diaz* explained, "the mere disclosure of Plaintiffs' viewing activity without revealing Plaintiffs' names or other private personal information" is not analogous to the traditional disclosure of private information. *Id.* at *4; *see also Maghoney v. Dotdash Meredith, Inc.*, 2026 WL

497402, at *5 (S.D. Cal. Feb. 23, 2026) (even sensitive health-related searches transmitted to advertisers did not establish an injury because the searches showed only that the plaintiff "searched and viewed publicly available health information," which could not itself reveal his health status or medical history).

The mere fact that Plaintiff viewed articles that discuss LGBTQ individuals—among other subjects—does not reveal her sexual orientation, beliefs, or any other private fact about her. Plaintiff's class definition confirms that her theory does not depend on the supposedly sensitive subject matter: she seeks to represent every California resident who accessed NPR.org, regardless of what content they viewed. Compl. ¶¶ 1, 64. Under that theory, viewing an NPR webpage about sports, weather, election results, jazz music, or any other subject would equally qualify as the disclosure of "embarrassing, invasive, or otherwise private information" under *Popa*. 153 F.4th at 791. Neither *Popa* nor any decision applying it extends Article III this far.

**c. Pseudonymous identifiers and speculative profiling do not establish a privacy injury.**

Nor does the metadata such as IP address and browser information allegedly transmitted alongside the URLs supply the missing injury. Internet users have no reasonable expectation of privacy in IP addresses, and device type, browser metadata, and similar technical information likewise do not establish a concrete privacy injury. *See United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008); *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025); *In re USA Today Co., Inc. Internet Tracking Litig.*, 2026 WL 932655, at *2–3 (N.D. Cal. Apr. 6, 2026).

Plaintiff's generalized allegations about "identity resolution" and behavioral profiling do not change that result. Compl. ¶¶ 4, 9, 45, 52, 59. The possibility that ordinary browsing data might contribute to a profile does not itself make that data private. *See Malko*, 2026 WL 2218133, at *4 (allegations that identifiers were used

to "enrich persistent profiles and databases" insufficient absent allegations concerning the other data those profiles contained) (cleaned up). Here, the alleged data remain two NPR page views and browser-level identifiers, with no allegation that any resulting profile identified St. Mary or contained sensitive information about her. That is the type of routine observation *Popa* analogized to "a store clerk's observing shoppers" and held insufficient to establish injury. 153 F.4th at 791; *see Malko*, 2026 WL 2218133, at *4.

**d. Neither an alleged statutory violation nor NPR's alleged economic benefit supplies the missing injury.**

Plaintiff's remaining theories of injury fare no better. First, the Complaint alleges that CIPA "codifies a substantive right to privacy" whose violation itself constitutes a concrete injury. Compl. ¶ 33. *Popa* expressly rejected such a "categorical rule" as improperly reverting to a "pre-*TransUnion* (even pre-*Spokeo*) approach that favors a legislative body's views in the aggregate over a plaintiff's individual circumstances." 153 F.4th at 792–93. The Ninth Circuit requires a plaintiff "to demonstrate more than just a statutory violation" to establish standing. *Id.* at 793; *see also Dawidzik*, 2025 WL 3786963, at *3 ("Plaintiff's alleged CIPA violation does not establish an Article III injury in fact.").

Second, NPR's alleged supposed economic benefit from the data does not establish economic injury to Plaintiff.[2] She does not allege that she paid NPR

[2] The alleged economic exchange is speculative in any event. The Complaint labels Plaintiff's use of NPR's Website a "data-for-services exchange" and invokes "advertising revenue," "monetary compensation," "data licensing benefits," and other "commercial value," Compl. ¶¶ 84–85, 103, but pleads no facts showing that NPR conditioned access to its content on providing the data at issue, assigned any value to that supposed consideration, or actually received revenue or compensation from St. Mary's two webpage views. Nor does it explain how those particular transmissions generated revenue for NPR. That gap is especially conspicuous given the Complaint's own allegations that NPR is a nonprofit organization and that the Website publishes NPR's journalism and editorial content. *Id.* ¶¶ 16, 18–19. Merely characterizing the

anything, paid a premium for privacy, attempted or intended to sell the information, lost the ability to do so, or otherwise lost money or property. Generalized allegations of unidentified benefits are not enough. *See Sisti*, 831 F. Supp. 3d at 988-89 (defendant's alleged receipt of "substantial financial benefits" insufficient absent resulting harm to plaintiff; diminution-of-value theory insufficient absent a market for the information and impairment of plaintiff's ability to participate in it).

## V. Plaintiff Fails to State Any Claim

The Court need not reach the merits, but the Complaint fails there too. To survive dismissal under Rule 12(b)(6), a complaint must plead sufficient facts to state a claim that is "plausible on its face;" "[t]hreadbare recitals" and legal conclusions couched as factual allegations to not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The Complaint fails that standard. Although it repeatedly characterizes the challenged conduct as the "interception" of the "contents" of Plaintiff's "communications," the Complaint's factual allegations describe something else: third-party analytics technologies allegedly received URLs identifying NPR-published webpages, along with browser and device information. Compl. ¶¶ 3–12, 38–60. Plaintiff does not allege that NPR or any third party intercepted anything she said, typed, submitted, or otherwise communicated about herself. That fundamental pleading defect—and others—require dismissal of each of Plaintiff's six claims.

### a. Plaintiff's CIPA and Federal Wiretap Act claims fail because she does not allege interception of the contents of any communication.

Plaintiff's wiretapping claims are foreclosed by Ninth Circuit precedent making clear that a simple URL identifying a webpage does not constitute "the contents of a communication." *In re Zynga*, 750 F.3d at 1108–09. Both CIPA § 631

---

alleged arrangement as an economic "exchange" does not make it one. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

and the Federal Wiretap Act protect the contents of communications, not routing or addressing information associated with them. *See* Cal. Penal Code § 631(a); 18 U.S.C. §§ 2510(8), 2511(1)(a). "Contents" means the "substance, purport, or meaning" of a communication, 18 U.S.C. § 2510(8), and CIPA similarly protects the substance of an exchange—an intrusion upon a person's "thoughts, ideas, or knowledge." *In re Apple Data Priv. Litig.*, 824 F. Supp. 3d 888, 900 (N.D. Cal. 2026). Plaintiff thus asks this Court to treat as "contents" precisely the information that the Ninth Circuit held is not: URLs identifying webpages.

The Court in *Zynga* drew that distinction in materially similar circumstances. There, Facebook and Zynga allegedly transmitted referrer URLs identifying webpages users had visited. 750 F.3d at 1101–03. The Ninth Circuit explained that a URL may constitute "contents" when it embeds "a search term or similar communication made by the user," because the URL then reveals the substance of the user's own communication. *Id.* at 1108–09. But a URL containing no such user-generated information merely identifies the webpage requested and "does not constitute the contents of a communication." *Id.* at 1109; *see also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) ("CIPA § 631(a)[ii] protects only the internal, user-generated material of a message[.]"). In reaching that conclusion, the *Zynga* court rejected plaintiffs' argument that the subject matter identified by a purportedly "sensitive" URL could itself reveal sensitive facts about the user. 750 F.3d at 1108 (rejecting argument that disclosure of a URL identifying a gay support-group page could reveal that a user was "gay and struggling to come out of the closet.").[3]

---

[3] Plaintiff's class definition confirms that her theory does not depend on the articles' subject matter. She seeks to represent all California residents who accessed NPR's Website, regardless of what they viewed. Compl. ¶¶ 1, 64. Thus, under Plaintiff's theory, a URL identifying an article about sports or weather is equally the "contents" of a communication—underscoring that her theory threats the requested webpage itself as "contents," contrary to *Zynga*.

That distinction resolves Plaintiff's claims. She does not allege that she entered a search term, completed a form, sent a message, typed into a chat box, or otherwise communicated any substantive information that an Analytics Technology acquired. Instead, she identifies the supposed "contents" as only the URLs and page titles of NPR articles she accessed. Compl. ¶¶ 70, 76. But those URLs and titles describe the subjects of NPR's reporting; nothing about them supports an inference about a visitor's characteristics or reasons for accessing the articles. If anything, those URLs identify NPR's speech, not Plaintiff's. A browser request for a webpage may identify which page was requested, but it does not transform NPR's address for that page—or the title of the article located there—into the content of a communication.

A decision issued just this week confirms the point. *See Wiley v. Universal Music Invs., Inc.*, 2026 WL 2690163, at *4 (N.D. Cal. Sept. 14, 2026). In *Wiley*, the court applied *Zynga* and held that full-string URLs identifying product and event pages were not "contents" under § 631 because they reflected "webpage addresses and associated browsing information, not any communication between a plaintiff and the website." The court distinguished tracking of "what users were searching for or what they wanted to do"—which could involve contents—from allegations that plaintiffs merely "visited particular websites" without "communicat[ing] anything in particular to those websites." *Id.* So too here: Plaintiff alleges which NPR pages she accessed, but no substantive communication she made to NPR.

**b. Plaintiff does not plausibly allege that any third party read a communication while it was in transit.**

Plaintiff's wiretap claims independently fail because the Complaint does not plead facts showing that any Analytics Technology read or learned the contents of a communication while it was in transit between Plaintiff and NPR. CIPA requires a third party to "read[], or attempt[] to read, or to learn the contents" of a communication "while the same is in transit or passing over any wire, line, or

cable." Cal. Penal Code § 631(a). The Wiretap Act similarly requires acquisition "contemporaneous with transmission." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Specifically, A plaintiff must plausibly allege not merely that a third party collected or received a communication in real time, but that it read or learned the contents of the communication *while the communication was still in transit*. *Firlej v. Petrosian Esthetic Enters., LLC*, 2026 WL 2575938, at *3–6 (C.D. Cal. Aug. 31, 2026). Allegations that tracking technology collected and transmitted data "in real-time" do not suffice: collection and transmission are not themselves "reading," and real-time transmission does not establish that the recipient read the communication while it remained in transit. *Id.* at *5–6.

The Complaint fails on both grounds. First, it does not plausibly allege that any Analytics Technology read the information allegedly transmitted while it was in transit. Plaintiff alleges that the technologies "intercepted," "received," or "collected" information, and then describes what the third parties allegedly did with that information *after collecting it*—using it for analytics, profiling, advertising, and other downstream purposes. *E.g.*, Compl. ¶¶ 9–12, 44–45, 51–52, 58–59. Those allegations do not establish that a third party read or learned the contents during transmission. In *Firlej,* the court found allegations that Google "read," "analyzed," and "learned" the plaintiff's information insufficient because they did not plausibly explain how—or, critically, when—Google actually read or learned the information. 2026 WL 2575938, at *3–5. Such conclusory allegations, the court held, merely track the language of CIPA and are not entitled to the presumption of truth. *Id.* at *4. Here too, the Complaint recites conclusory allegations of receipt or processing of data, followed by downstream use. The Complaint does not plausibly allege that any Analytics Technology read or learned the contents of a communication while it was in transit.

Second, the Complaint does not plausibly allege that any interception occurred while a communication was in transit to NPR. Although Plaintiff

repeatedly labels the alleged activity "real time," "contemporaneous," and "in transit," Compl. ¶¶ 12, 44, 51, 58, 70, 76, those labels are conclusory, and do not establish when any third party supposedly intercepted a communication. *See Firlej*, 2026 WL 2575938, at *5–6; *Sisti*, 831 F. Supp. 3d at 991 (rejecting "the illogical notion that Bosley could have disclosed Plaintiff's information to third parties *while* that information was still in transit from Plaintiff *to Bosley*") (emphasis in original); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (courts need not accept conclusory allegations or unwarranted inferences).

Indeed, the Complaint's own technical allegations undermine Plaintiff's conclusory labels. Again, none of the screenshots concern Plaintiff's visits; the Complaint alleges only "on information and belief" that the Analytics Technologies operated when she accessed the Website. Compl. ¶ 39. But that aside, the screenshots do not depict any in-transit interception. They depict a browser sending separate requests directly to Google, ComScore, and Cxense, with the NPR webpage URL included as a parameter *within* those third-party requests. Compl. ¶¶ 40–42, 47–49, 54–56 & Figs. 1–2, 4–5, 7–8. In other words, the screenshots do not show any Analytics Technology intercepting or reading a communication as it traveled from Plaintiff's browser to NPR.

**c. The Federal Wiretap Act claim independently fails for two additional reasons.**

Because the Federal Wiretap Act is a one-party consent statute that does not provide a private right of action based on secondary liability, the claim fails.

**i. NPR's consent independently defeats Plaintiff's Federal Wiretap Claim.**

The Federal Wiretap Act permits interception where the interceptor "is a party to the communication *or* where one of the parties to the communication has given prior consent." 18 U.S.C. § 2511(2)(d) (emphasis added). Plaintiff collapses these two alternatives, characterizing § 2511(2)(d) as a "party exemption" and

arguing that it does not apply because the Analytics Technologies were third parties. Compl. ¶ 77. But whether the Analytics Technologies were parties is beside the point: Plaintiff alleges that the communications were between her and NPR's Website and that NPR "intentionally configured its website to transmit" the challenged information to the Analytics Technologies. *Id.* NPR was therefore a party that consented to the alleged interception. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 842 (N.D. Cal. 2024) (one-party consent defense "leap[ed] off the page" where website operators installed third-party code).

Nor does the crime-tort exception apply. That exception requires that the interception be undertaken "for the purpose of committing" an independent criminal or tortious act; it is not enough that the alleged interception itself is unlawful. 18 U.S.C. § 2511(2)(d); *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999); *Sisti*, 831 F. Supp. 3d at 990–91. Plaintiff alleges that NPR deployed the technology for analytics, audience measurement, advertising, and related purposes—not to commit an independent crime or tort. Compl. ¶¶ 4, 9–12; *see Ramirez v. Trusper, Inc.*, 2026 WL 2351235, at *8 (N.D. Cal. Aug. 13, 2026) (rejecting exception where tracking allegedly served targeted advertising and financial gain); *cf. R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *6 (C.D. Cal. Jan. 13, 2025) (exception adequately alleged where healthcare provider's purpose was to disclose protected health information to third parties in violation of HIPAA).

**ii. The Wiretap Act does not provide a private right of action for secondary liability.**

Plaintiff's Wiretap Act claim also fails because the Complaint does not allege that NPR itself intercepted Plaintiff's communications. Rather, it alleges the Analytics Technologies, intercepted and received the challenged information. Compl. ¶¶ 8–12, 67–76. Unlike CIPA § 631, the Federal Wiretap Act provides no civil cause of action for secondary liability. *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1006 (9th Cir. 2006) ("There is no explicit provision in §§ 2702 and 2707 or

anywhere else in the ECPA[] providing for secondary liability."); *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1249 (10th Cir. 2012) ("Because the ECPA creates no aiding-and-abetting civil liability, [defendant] is liable only if it itself intercepted those communications."). And § 2511(1)(a)'s prohibition against "procur[ing]" another to intercept does not create a private claim against NPR because Congress expressly removed procurement liability from § 2520's civil remedy in 1986. *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168–69 (5th Cir. 2000); *see also Freeman*, 457 F.3d at 1006. Thus, even if procuring an interception violates § 2511, a private plaintiff cannot recover from a defendant on that basis.

**d. Plaintiff fails to state a UCL claim.**

Plaintiff's UCL claim fails because she does not allege that she "lost money or property" as a result of NPR's conduct as required for a UCL claim. Cal. Bus. & Prof. Code § 17204; *see also Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011) (UCL standing requires "economic injury"). Plaintiff paid nothing to access NPR's Website, lost no property, and does not allege that the challenged disclosures impaired her ability to sell or monetize her information. Nevertheless, she alleges that NPR benefited economically from her browsing data. Compl. ¶¶ 84–85. But a defendant's alleged economic benefit is not an economic loss to the plaintiff. *See Khamooshi*, 786 F. Supp. 3d at 1182-83 (alleged profit from plaintiffs' data did not establish economic harm); *Sisti*, 831 F. Supp. 3d at 988 (alleged "substantial financial benefits" insufficient absent harm to plaintiff).

Nor can Plaintiff establish economic injury by characterizing the transmitted information as valuable property. That theory requires "the existence of a market for [the plaintiff's] personal information and an impairment of [her] ability to participate in that market." *Sisti*, 831 F. Supp. 3d at 988. Plaintiff alleges neither. Nor could she, as the information at issue consists of NPR-published URLs and browser-related information—not information Plaintiff created or supplied about

herself. Generalized allegations that consumer data has value therefore do not establish that Plaintiff lost money or property. *See id.*

The UCL's substantive prongs fare no better. The unlawful prong "'borrows' violations of other laws," *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999), but Plaintiff has not plausibly alleged any predicate violation. *See supra*, §§ V.a-V.c. Nor does relabeling the same conduct "unfair" save the claim. California regulates online tracking through disclosure and consumer choice, not a prohibition on tracking, and Plaintiff alleges no ignored opt-out, disregarded privacy choice, or promise that tracking would not occur. *See Rodriguez v. Accident Fund Holdings, Inc.*, 2026 WL 2365062, at *4–6 (C.D. Cal. Aug. 13, 2026). Finally, the Complaint pleads no specific facts showing damages are inadequate or incomplete as required to seek equitable relief under the UCL. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

**e. Plaintiff fails to state a constitutional or common-law privacy claim.**

Plaintiff's constitutional and common-law privacy claims fail under substantially overlapping standards. A constitutional claim requires a legally protected privacy interest, a reasonable expectation of privacy, and a "serious invasion" of that interest. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35–37 (1994). Intrusion upon seclusion similarly requires an intentional intrusion into a private matter in which the plaintiff has a reasonable expectation of privacy that is "highly offensive" to a reasonable person. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285–87 (2009); *see In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601–02 (9th Cir. 2020).

**i. Plaintiff alleges no intrusion into information in which she had a reasonable expectation of privacy.**

Plaintiff does not allege that the Analytics Technologies captured anything she searched for, typed, submitted, or otherwise communicated about herself. As

discussed above, she alleges only URLs identifying publicly available NPR articles, along with browser and device information. She had no reasonable expectation of privacy in such internet addressing information. *See Forrester*, 512 F.3d at 510 ("[E]-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information.").

California law confirms that Plaintiff could not reasonably expect that merely visiting a public website meant no analytics tracking would occur. As *Rodriguez* recently explained in dismissing the same California constitutional and invasion of privacy claims, California has specifically regulated online tracking through CalOPPA and the CCPA, and those statutes establish a regime of "transparency and consumer choice," not a prohibition on tracking. 2026 WL 2365062, at *4–7 (C.D. Cal. Aug. 13, 2026). The CCPA expressly contemplates collection and sharing of browsing history, IP addresses, and device identifiers, while giving consumers rights to notice and to opt out of certain sales or sharing. *Id.* at *3–6*; see* Cal. Civ. Code §§ 1798.100, 1798.120. Thus, "the right to reject the collection or sharing of personal information is not grounded in a per se prohibition against tracking and collection." *Rodriguez*, 2026 WL 2365062, at *5. Here, Plaintiff does not allege that she exercised any right to opt out of the alleged sharing, much less that NPR continued tracking after an opt-out. Under the baseline California itself has established, routine collection of browsing information on a public website does not, without more, violate a reasonable expectation of privacy. *Id.* at *6–7.

**ii. The alleged conduct is neither serious nor highly offensive.**

The alleged intrusion also is neither a "serious invasion" of privacy nor "highly offensive" to a reasonable person. *Hill*, 7 Cal. 4th at 37; *Hernandez*, 47 Cal. 4th at 295. That inquiry considers the likelihood of serious harm, the degree and

setting of the intrusion, the defendant's motives and objectives, and whether social norms render the conduct inoffensive. *In re Facebook*, 956 F.3d at 606.

Routine collection and disclosure of browsing activity on a public website generally does not meet that demanding standard. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126–27 (S.D. Cal. 2023) (collecting cases holding disclosure of browsing-history URLs, unique identifiers, search queries, demographic information, device identifiers, and even geolocation information insufficiently offensive). *Popa* likewise held that technology capturing URLs, mouse movements, clicks, keystrokes, and other website interactions did not resemble the "highly offensive" invasions traditionally actionable at common law, but instead was akin to "a store clerk's observing shoppers." 153 F.4th at 786, 791.

The allegations here are less intrusive still. Plaintiff alleges only analytics activity associated with visits to publicly available NPR webpages. She does not allege that NPR tracked her across the Internet, obtained sensitive information she supplied about herself, or compiled a detailed personal profile. *Cf. In re Facebook*, 956 F.3d at 598–99. Nor does the Complaint allege any concrete harm resulting from the challenged activity. Under these circumstances, the alleged collection of URLs and browser-level information does not plausibly amount to an egregious breach of social norms or a highly offensive invasion of privacy. *See Cousin*, 681 F. Supp. 3d at 1126–27; *Hernandez*, 47 Cal. 4th at 295.

**f. Plaintiff fails to state a claim for unjust enrichment.**

Plaintiff's unjust enrichment claim fares no better. As an initial matter, "[f]ederal courts routinely dismiss unjust enrichment claims because no such cause of action exists under California law." *First Capitol Consulting, Inc. v. NetTax, LLC*, 2026 WL 2603772, at *8 (C.D. Cal. Sept. 2, 2026). In any event, Plaintiff does not allege that NPR "received and unjustly retained a benefit at [her] expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). The Complaint does not allege that Plaintiff paid NPR anything, that NPR

conditioned access to its publicly available journalism on surrendering browsing data, or that NPR received any identifiable payment, licensing revenue, or other compensation attributable to Plaintiff's two alleged page views. Instead, Plaintiff's theory rests on an alleged "data-for-services" exchange in which NPR supposedly received "monetary compensation, data licensing benefits, promotional support, or other commercial value" from third-party Analytics Technologies in exchange for visitors' browsing data. Compl. ¶¶ 103–05. But those conclusory allegations identify no economic benefit that *NPR itself* received from Plaintiff's browsing activity or at her expense. *See id.* ¶¶ 84–85, 103–05.

Nor does labeling Plaintiff's browsing information "personal property with recognized economic value" establish unjust enrichment. *Id.* ¶ 104. The information allegedly transmitted consists of NPR-created URLs and page titles together with browser-level identifiers; Plaintiff does not allege that she created that information (nor could she), ever sold or attempted to sell it, or lost any ability to do so. And, as discussed above, she does not plausibly allege that the information revealed anything private about her. An alleged commercial benefit from data is not "unjust" merely because the defendant allegedly obtained value from it. *See Malko*, 2026 WL 2218133, at *5 (because plaintiff failed to establish an actionable privacy injury, he likewise failed to allege that any profit earned from his data was unjust); *In re USA Today Co.*, 2026 WL 932655, at *3 (same).

Even if the Complaint identified any benefit Plaintiff conferred on NPR, it does not allege unjust retention of such benefit. Unjust enrichment ordinarily requires circumstances showing that the benefit was conferred through "mistake, fraud, coercion, or request." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *see Diaz*, 2026 WL 1090958, at *6. The Complaint alleges none. Its assertion that NPR's supposed "concealment" and failure to obtain affirmative consent make any benefit unjust, Compl. ¶ 105, does not suffice because California law does not make affirmative consent the baseline for website tracking. *Rodriguez*,

2026 WL 2365062, at *4–6. It is also inconsistent with the Complaint's citation to NPR's privacy policy disclosing the practices at issue. Plaintiff alleges no ignored opt-out, disregarded privacy choice, or promise by NPR that tracking would not occur. Put simply, the lack of affirmative consent does not make an alleged benefit to NPR unjust.

## VI. Conclusion

For the foregoing reasons, the Court should dismiss the Complaint in its entirety. Plaintiff has not established that this Court may exercise personal jurisdiction over NPR or that she suffered the concrete injury necessary for Article III standing. And even if the Court reaches the merits, the Complaint does not plausibly allege that anyone intercepted the contents of a communication while in transit, or otherwise state a claim under CIPA, the Federal Wiretap Act, or Plaintiff's derivative UCL, privacy and restitutionary theories. NPR respectfully requests that the Court grant its Motion and dismiss the Complaint without leave to amend.

Dated: September 18, 2026

Respectfully submitted,

ZWILLGEN LAW LLP

By: /s/ Sheri Pan
Sheri Pan (SBN 316136)
sheri@zwillgen.com

*Attorney for Defendant*
*National Public Radio, Inc.*